**LOCKHEED MARTIN CORP., Plaintiff,**

v.

**SPACE SYSTEMS/LORAL, Defendant.**

No. C 95–3530 SI.

United States District Court, N.D. California.

March 7, 2000.

Edward V. Filardi, Robert B. Smith, Bruce C. Anderson, David W. Hansen, Skadden Arps Slate Meagher & Flom, LLP, New York, NY, for Lockheed Martin Corp.

Edward Vincent King, Jr., King & Kelleher LLP, San Francisco, CA, James H. Wallace, Jr., John B. Wyss, Gregory L. Lyons, Timothy R. Holbrook, Wiley Rein & Fielding, Washington, DC, for Space Systems/Loral, Inc.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF NON–INFRINGEMENT OF U.S. PATENT NO. 4,084,772

ILLSTON, District Judge.

On February 25, 2000, the Court heard argument on defendant's motion for summary judgment of non-infringement of U.S. Patent No. 4,084,772. Having considered the arguments of counsel and the papers submitted, and for the reasons set out below, the Court hereby GRANTS defendant's motion for summary judgment.

### BACKGROUND

Plaintiff Lockheed Martin Corporation ("Lockheed") alleges infringement of United States Patent No. 4,084,772 (the " '772 patent"), entitled "Roll/Yaw Body Steering For Momentum Biased Spacecraft," by defendant Space Systems/Loral, Inc. ("SSL"). The '772 patent claims a system and method for reducing the pointing errors of a satellite that has entered into an inclined orbit by varying the speed of the satellite's transverse momentum wheel in a sinusoidal manner. Although Lockheed had alleged that ten different types of SSL satellites infringe the '772 patent, it now concedes that six of these types do not infringe. Because the four remaining types of satellites all use the same momentum wheel configuration and inclined orbit software, the focus of this action has been narrowed to the first of these four, which is the Intelsat VII satellite.

Most communications satellites operate optimally in a geosynchronous, equatorial orbit, circling the earth once every 24 hours in the equatorial plane and thus remaining in the same position relative to the earth's surface. Such positioning allows for a consistent relationship between the satellite and a transmitter on earth, from which the satellite receives and relays radio signals. It is essential that a satellite maintain a proper attitude, or orientation, so that its communication devices (e.g., antennae) are properly directed

towards the earth. Satellites are subject to various destabilizing forces, such as gravitational effects from the sun and moon, or even the force exerted by light from the sun, which all serve to disturb ideal orbit and attitude. For example, the orbit of a geostationary satellite acquires an inclination at the rate of about 0.8 degrees a year due to the gravitational forces of the sun and moon. These forces cause the satellite to drift out of its orbit in the equatorial plane and into an inclined orbit, which in turn causes a periodic attitude error.

To maintain a proper attitude, most satellites employ at least one momentum wheel powered by an electric motor. A spinning momentum wheel creates angular momentum, or "stiffness," which provides a torquing force that alters the attitude of the satellite. Thus, by careful control, a proper attitude for the satellite can be maintained. The method and apparatus claimed by the '772 patent provide for a satellite momentum wheel that is used to correct for the natural periodic pointing error of inclined orbit satellites. This is accomplished by altering the speed of the wheel, which in turn adjusts satellite attitude and counteracts the attitude error introduced by the inclined orbit.

**Case History**

On August 19, 1998 the Court issued its Order Partially Granting Defendant's Motion for Summary Judgment, which construed a disputed claim term, granted SSL's motion for summary judgment of non-infringement of claim 7, and denied SSL's motion for summary judgment of non-infringement of claims 1–6. The term "bi-directional rotation," which is found in claim 1, was construed to require that the rotating transverse wheel accelerate in one direction, slow down to a speed of zero, and then rotate in the opposite direction.

On March 11, 1999 the Court issued its Claim Construction Order, which construed another disputed claim term and clarified other contested claim construction matters. The term "varies sinusoidally," which is also found in claim 1, was con-

strued to mean a variation in a sine-shaped curve that passes through zero. The Court also found that this term inherently excludes any other added components that might cause the transverse wheel speed not to pass through zero. The Court's earlier construction of "bi-directional rotation" was reaffirmed, and the Court declined to adopt an additional proposed limitation that the wheel be capable of "operating through zero in a controllable manner."

After subsequent discovery, defendant SSL now moves again for summary judgment of non-infringement. Because the Court has already held that claim 7 is not infringed, and because claims 2–6 are dependent upon claim 1, a determination of non-infringement of claim 1 would be dispositive. The issues presently before this Court are whether elements (b) and (f) of claim 1 may be found in the accused devices either literally or through the doctrine of equivalents.

## LEGAL STANDARD

### 1. Summary Judgment

Noninfringement is an issue of fact. *See Suntiger, Inc. v. Scientific Research Funding Group,* 189 F.3d 1327, 1335 (Fed. Cir.1999). A motion for summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Summary judgment is as appropriate in a patent case as in any other case in which no genuine issue of material fact remains. *See Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.,* 731 F.2d 831, 835 (Fed.Cir.1984). Procedural matters not unique to patent law are decided by applying the law of the relevant regional circuit.

*See Transmatic, Inc. v. Gulton Indus., Inc.,* 53 F.3d 1270, 1278 (Fed.Cir.1995).

It is initially the burden of the party moving for summary judgment to establish that there is no genuine issue of material fact and that it is therefore entitled to judgment as a matter of law. *See British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 951 (9th Cir.1978). If the moving party meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, then the burden of production shifts so that the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553). To carry this burden, the non-moving party must do more than simply show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The mere existence of a scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Evidence that "is merely colorable, or is not significantly probative," is not sufficient to avoid summary judgment. *See id.* at 249–50, 106 S.Ct. 2505.

Conversely, summary judgment cannot be granted where a genuine dispute exists as to any material fact. *See* Fed. R. Civ. Proc. 56(c). A material fact is one which might affect the outcome of the case under the applicable law. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. A dispute about a material fact is genuine if a reasonable jury could return a verdict for the non-moving party. *See id.* In judging evidence at the summary judgment stage, a court cannot make credibility determinations or weigh conflicting evidence, and must draw all inferences in the light most favorable to the nonmoving party. *See*

*T.W. Electric,* 809 F.2d at 630–31 (citing *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356). Conclusory, speculative testimony and arguments in moving papers are insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir.1979).

**2. Doctrine of Equivalents**

■ Under the "doctrine of equivalents," a product that does not literally infringe upon the express terms of a patent claim may still infringe if there is "equivalence" between the accused product and the patent claim. *See Warner–Jenkinson Co., Inc. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 20, 117 S.Ct. 1040, 1045, 137 L.Ed.2d 146 (1997); *Graver Tank & Mfg. Co. v. Linde Air Products Co.,* 339 U.S. 605, 609, 70 S.Ct. 854, 94 L.Ed. 1097 (1950). This doctrine allows for a finding of infringement where differences between a patented device and an accused product are insubstantial, and an accused device has traditionally been held to infringe if it performs substantially the same function in substantially the same way to achieve substantially the same result as the claimed invention. *See Graver Tank,* 70 S.Ct. at 856.

Application of the doctrine, however, has recently been limited by the Supreme Court to exclude broad comparisons that would eliminate any individual claim element. *See Warner–Jenkinson,* 117 S.Ct. at 1049. "Each element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." *Id.* Whether a substitute element in an accused device matches the function, way, and result or is substantially different from a corresponding claimed element is determined by an analyzing the role played by each element in the context of the specific patent claim. *Id.* at 1054. "If a theory of equivalence would vitiate a

claim limitation, however, then there can be no infringement under the doctrine of equivalents as a matter of law." *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1160 (Fed.Cir. 1998) (citing *Warner–Jenkinson*, 117 S.Ct. at 1049, 1053 n. 8).

## DISCUSSION

The following facts are undisputed. The accused Intelsat VII is a pitch-momentum biased inclined orbit satellite that uses momentum wheels to control satellite attitude. In normal operation ("V mode"), the Intelsat VII rotates two momentum wheels ("V wheels") in opposite directions in a V-formation about the pitch axis of the satellite. These wheels rotate at high speed according to a predetermined rate schedule and do not change direction. A third wheel ("L wheel" or "reaction wheel") does not rotate when the satellite operates in V mode, and serves as a backup wheel in the event that either V wheel fails. Should one V wheel fail, the L wheel would then rotate in a direction opposite that of the remaining V wheel. The L wheel is thus capable of rotating in either direction, with the two modes designated as L1 and L2. The axis of this reaction (L) wheel is mounted parallel to the yaw axis, and is thereby a "transverse wheel" as that term is used in the '772 patent, rendering the reaction wheel the wheel of interest in an infringement analysis.

### 1. "varies sinusoidally"

■ Paragraph (b) of claim 1 of the '772 patent calls for a:

means for rotating said [transverse] wheel in accordance with a predetermined rate schedule which *varies sinusoidally* over the orbit at the orbital frequency of the satellite whereby the attitude of said satellite is offset in response to the effect of said rotating wheel by the direction of the pitch axis being changed with respect to said momentum vector, the direction of said pitch axis with respect to the inclined orbit normal *varying sinusoidally* at the orbital frequency to null said roll pointing error due to said orbit inclination,

the momentum vector being maintained perpendicular to the plane of the geosynchronous orbit to null said yaw pointing error due to said orbit inclination,

'772 patent at col. 10:14–27 (emphasis added). In its earlier Claim Construction Order, the Court construed "varies sinusoidally" to mean a variation in a sine-shaped curve that passes through zero, and excluded any other components that might cause the transverse wheel speed not to pass through zero. It is undisputed that the speed of the accused reaction wheel does not slow to zero and reverse direction as required by the Court's earlier construction of the term "varies sinusoidally." Consistent with its earlier construction of "varies sinusoidally," and despite Lockheed's invitation to reinterpret this term, the Court finds that this limitation is not literally met. It is also undisputed that the speed of the Intelsat VII reaction wheel varies according to a rate schedule that is not purely sinusoidal, providing an additional basis for finding that this limitation is not literally met. Accordingly, the Court concludes as a matter of law that the Intelsat VII does not literally infringe the '772 patent. This leaves only the matter of possible infringement through the doctrine of equivalents.

SSL points to this Court's prior orders and contends that the Court's rejection of any variation on "varies sinusoidally" bars any equivalence finding, because such a finding would vitiate this limitation and thereby violate the "all elements" rule of *Warner–Jenkinson*. SSL further argues that Lockheed has not shown that the variations between the claimed invention and the Intelsat VII are insubstantial. It asserts that the "function" of the claimed "means for rotating" is to provide satellite attitude control, that the "way" is to generate a signal to alter the wheel speed such that it moves sinusoidally and passes through zero twice per orbit, and that the "result" is the nulling of roll pointing error. SSL then argues that the Intelsat VII reaction wheel "functions" as a back-

up, that pointing accuracy is maintained by "way" of a complex equation, and that the "result" is greater pointing accuracy and fuel savings. Finally, SSL points out that its approach is the subject of a later patent, and argues that this demonstrates the substantial and patentable differences between the accused device and the claimed invention.

Lockheed argues that the differences between the Intelsat VII and the claimed invention are insubstantial, and proposes different definitions for "function," "way," and "result." Lockheed defines "function" as introducing a yaw momentum that varies sinusoidally about zero over the course of the orbit; "way" as sinusoidally varying the rate of a yaw wheel; and "result" as rotating the satellite above the roll axis to compensate for the sinusoidal roll error introduced by inclined orbit. Lockheed elaborates that yaw momentum is zero in both the claimed invention and the Intelsat VII when either satellite is in an equatorial orbit, and that when operation switches to inclined orbit both satellites introduce a yaw momentum that varies sinusoidally about zero ("function"). Lockheed then explains that both devices create this yaw momentum by adding a sinusoidal input to the yaw wheel that was not already there ("way"), and that both devices compensate for the sinusoidal pointing error created by inclined orbit ("result"). Lockheed concludes that a factual dispute exists as to whether there is infringement under the doctrine of equivalents, such that summary judgment would be inappropriate.

In its equivalence analysis the Court must adhere to the "all-elements" rule of *Warner–Jenkinson,* and determine the appropriate scope of the "missing" element to be analyzed. The missing element here is the "means for rotating" of paragraph (b). SSL's argument that its reaction wheel functions as a backup is unpersuasive, because it does not account for the function of the wheel once it begins to rotate. Furthermore, it confuses the function of element (a) with that of element (b). Several other SSL arguments are not directed at the narrow focus of missing ele-

ment (b). Likewise, Lockheed's arguments are not focused on the respective "means for rotating" of each device, but instead tend to compare devices as a whole. The definitions of function, way, and result proposed by the parties are therefore flawed, and the Court must first determine them.

■ Element (b) itself calls for a means having the function of "rotating said wheel" by way of using "a predetermined rate schedule which varies sinusoidally" with the result that "the attitude of said satellite is offset ... to null said roll pointing error due to said orbit inclination." In analyzing solely for element (b), it appears that the Intelsat VII does have a means for rotating its transverse wheel and that this means does result in an attitude offset to null roll pointing error due to orbit inclination. Consequently, this Court cannot find as a matter of law that the "function" and "result" of the accused element are not substantially the same as those of the claimed element. The non-infringement analysis thus ultimately turns on whether any material factual dispute exists that could cause a reasonable jury to conclude that any element in the accused device rotates its transverse wheel in substantially the same "way" that claimed element (b) does.

SSL proposes that the "way" is "to generate a signal to alter the wheel rate, so that the wheel speed passes through zero twice per orbit and moves in a sinusoidal fashion," and Lockheed offers the simpler "way" of "by sinusoidally varying the speed of a yaw wheel." The "way" proposed by SSL is quite detailed, but it does reflect the definition of "varies sinusoidally" from this Court's prior order. The "way" proposed by Lockheed, conversely, is problematic in that it uses "sinusoidally varying" inconsistently with this Court's prior claim construction. The Court declines to give these words any different meaning in its interpretation of "way" than it did in its prior order.

Element (b) calls for use of "a predetermined rate schedule which varies sinusoidally." The term "varies sinusoidally" has already been determined to require "that the wheel speed passes through zero twice per orbit." Thus SSL's interpretation of "way" is correct. Because it is undisputed that the transverse wheel of the Intelsat VII does not pass through zero twice per orbit, the "way" of the "means for rotating" in the Intelsat VII is not substantially similar to the "way" of the claimed invention. No equivalent for element (b) exists.

Furthermore, if any theory of equivalence would vitiate a claim limitation, then there can be no infringement under the doctrine of equivalents as a matter of law. *See Tronzo*, 156 F.3d at 1160. In *Tronzo*, the plaintiff was not permitted to ignore a claim limitation that its cup have a "generally conical outer surface" by asserting that the accused hemispherical cups were "equivalent." *See id.* Likewise, Lockheed cannot ignore the claim limitation "varies sinusoidally" by asserting that the Intelsat VII has an "equivalent" that does not "vary sinusoidally" as the Court has construed this term. Because Lockheed has not alleged that any element of the Intelsat VII meets this limitation, its theory of equivalence would vitiate this limitation. The Court thus finds that element (b) of claim 1 of the '772 patent is not present in the Intelsat VII through the doctrine of equivalents.

**2. "means responsive to said wheel speed and direction signal"**

■ Paragraph (f) of claim 1 of the '772 patent calls for:

said orientation means including *means responsive to said wheel speed and direction signal* for modifying said attitude error signal to be non-responsive to said offset in attitude generated by said transverse wheel, said attitude offset being in addition to said roll attitude errors,

'772 patent at col. 10:37–42 (emphasis added). The parties have stipulated that "a means that is responsive to the portion of the element (c) signal which indicates wheel speed, but either does not receive or is not responsive to the portion of the signal that indicates the direction of rotation of the wheel, would not literally satisfy this limitation in element (f)." It is undisputed that the accused reaction wheel, while capable of rotating in either direction, does not change direction once it begins rotating in either L mode. It is also undisputed that the Intelsat VII has tachometers that generate signals indicative only of wheel speed, and that the Intelsat VII telemeters to its ground-based computer processors its tachometer readings, the commanded speed, and the measured transverse L wheel spin polarity (direction).

SSL contends that its satellites cannot satisfy element (f), because they contain no mechanism that receives or responds to a "direction" portion of a signal. SSL further argues that any directional or "wheel spin polarity" information is not used in the control loop of the satellite, and that such information is not necessary because the direction of the reaction wheel never changes. Lockheed counters that the ground-based computer processors operate as part of the control loop by responding to discrepancies between commanded and reported values. Wheel direction is obvious and can be inferred from the other signals given. Furthermore, should the spin polarity signal indicate an incorrect direction, this would result in an "exception condition" and the ground based computer processors would respond to correct the problem. SSL replies that paragraph (f) recites that its responsive means be for "modifying said attitude error signal to be non-responsive to said offset in attitude generated by said transverse wheel," and that this function is not accomplished by the ground-based computer processors of the Intelsat VII satellite.

Although its momentum wheels do not change direction, it appears that a signal for direction may exist in the Intelsat VII satellite structure. Even if Lockheed is correct that the ground-based computers

receive a signal indicative of wheel direction and are part of the claimed control system, however, Lockheed does not even argue that any "means responsive to [a] wheel speed and direction signal" performs the function recited in paragraph (f). A direction signal may exist and a means for modifying an attitude error signal to be non-responsive to an offset in attitude generated by said transverse wheel may exist, but Lockheed does not argue that the "means for modifying" is responsive to any direction signal.

Lockheed's own arguments suggest that the function of the polarity or direction signal is to ensure that the wheel is spinning in the proper direction, and that the only means responsive to this signal is one that would reverse the wheel direction should this "exception condition" ever arise. The limitation requiring element (f) to be responsive to a wheel direction signal is simply not met, and thus element (f) does not exist in the Intelsat VII satellite. Any attempt at an equivalence analysis ends with the substantial difference in function between the accused means responsive to a polarity or direction signal and the function recited in paragraph (f). Accordingly, the Court finds that element (f) of claim 1 of the '772 patent is not present in the Intelsat VII either literally or through the doctrine of equivalents.

## CONCLUSION

For the foregoing reasons, the Court finds that neither element (b) nor element (f) of claim 1 of the '772 patent is present in the accused devises either literally or under the doctrine of equivalents. The Court therefore GRANTS summary judgment in favor of SSL and holds that SSL has not infringed U.S. Patent No. 4,084,-772 either literally or under the doctrine of equivalents.

**IT IS SO ORDERED.**