Dr. Raymond G. TRONZO,
Plaintiff–Appellee,

v.

BIOMET, INC., Defendant–Appellant.

Nos. 97–1117, 97–1177 and 97–1213.

United States Court of Appeals,
Federal Circuit.

Aug. 28, 1998.

Rehearing Denied Oct. 19, 1998.

James F. Davis, Howrey & Simon, Washington, DC, argued, for plaintiff-appellee. With him on the brief were Jeffrey I. Auerbach and Michael N. Haynes. Of counsel on the brief were Robert S. Hackleman, Connis O. Brown, III, and George S. LeMieux, Gunster, Yoakley, Valdes–Fauli & Stewart, P.A., Fort Lauderdale, FL.

Donald R. Dunner, Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., Washington, DC, argued, for defendant-appellant. With him on the brief were Don O. Burley and Robert L. Burns. Of counsel on the brief was L. Martin Reeder, Jr., Steel Hector & Davis, West Palm Beach, FL.

Before RICH and NEWMAN, Circuit Judges, and ARCHER, Senior Circuit Judge.*

Opinion for the court filed by Senior Circuit Judge ARCHER. Concurring opinion filed by Circuit Judge NEWMAN.

ARCHER, Senior Circuit Judge.

Biomet, Inc. (Biomet) appeals the judgment of the United States District Court for the Southern District of Florida, 91–CV–8175, holding Biomet liable for infringement of U.S. Patent No. 4,743,262 ('262 patent) and, under Florida law, for breach of a confidential relationship and fraud. The court determined that claims 1, 2, 9, and 10 of the '262 patent were not invalid or unenforceable for inequitable conduct and that Biomet's device infringed claims 1 and 9 literally and claims 1, 2, 9, and 10 under the doctrine of equivalents. Because claims 1 and 9 are not entitled to the filing date of the '262 patent's parent application and are anticipated by intervening prior art, we reverse the

---

* Senior Circuit Judge Glenn L. Archer, Jr. vacated the position of Chief Judge on December 24, 1997.

district court's judgment that these claims are not invalid. Because infringement under the doctrine of equivalents would vitiate the conical limitation in claims 2 and 10, we reverse the district court's judgment of infringement as to these claims. Finally, because substantial evidence supports the jury's verdicts regarding the state law causes of action but the damages awarded thereunder are not commensurate with Dr. Tronzo's (Tronzo) injury, we affirm-in-part and vacate-in-part on those issues, and remand for reconsideration of damages.

## BACKGROUND

The patent and technology in this case relate to artificial hip sockets that include cup implants adapted for insertion into an acetabular, or hip, bone. The claims of the '262 patent at issue read:

1. An acetabular cup prothesis [sic] comprising a body extending generally longitudinally and terminating into front and rear surfaces, said front surface extending substantially transversely to said body; and at least one fin for securing said cup to a prepared acetabulum cavity, said fin having a length extending generally longitudinally from said front surface toward said rear surface continuously along said body throughout the entire length of said fin, and said fin being configured so as to extend radially outwardly beyond the perimeter of said front surface and said body so as to engage with the cavity thereby securing said cup.

2. An implant of claim 1, wherein the body has a generally conical outer surface.

9. An acetabular prosthesis consisting essentially of (1) a body extending generally longitudinally and terminating into front and rear surfaces extending substantially transversely to said body; and (2) at least one fin for securing said cup to a prepared acetabulum cavity, said fin having a length extending generally longitudinally from said front surface toward said rear surface continuously along said body throughout the entire length of said fin, and said fin being configured so as to extend radially outwardly beyond the perimeter of said front surface and said body so as to engage with the cavity thereby securing said cup.

10. A prosthesis of claim 9, wherein the body has a generally conical outer surface.

Figures 1 and 3 of the '262 patent illustrate the preferred embodiment of the invention:

The cup 12 is inserted into a bore or hole 14 in the patient's hip bone 10. The cup has a plurality of longitudinally extended fins (24, 26, and 28) that allow the cup to grip beyond the bore 14 and to lock the prosthesis in place. Once the cup is in place, the fins provide additional resistance to the rotation

of the cup and allow bony ingrowth into areas not necessarily found in other systems.

Pictured below is the accused Mallory/Head cup, DTX 469A, a hemispherical, finned cup.

 

On March 24, 1987, Tronzo filed the application that yielded the '262 patent as a continuation-in-part of an application filed on June 1, 1984, which issued as U.S. Patent No. 4,681,589 ('589 patent). The '262 patent issued to Tronzo on May 10, 1988. Subsequently, the '262 patent was twice reexamined at the Patent and Trademark Office, resulting in the confirmation of the patentability of the original claims and the addition of claims 9, 10, and 11.

Tronzo sued Biomet on April 25, 1991 for patent infringement and, under Florida law, for breach of a confidential relationship, fraud, and unjust enrichment. By special verdict, the jury found that the patent was entitled to the filing date of the '589 patent's application (the parent application), was not invalid, and was willfully infringed and that Biomet was liable under state law for breach of a confidential relationship, fraud, and unjust enrichment. The jury awarded Tronzo $3,805,000 for patent infringement; $4,757,-000 in compensatory plus $15,000,000 in punitive damages for the breach of a confidential relationship; $7,134,000 in compensatory and $20,000,000 in punitive damages for fraud; and $4,750,000 in compensatory damages for unjust enrichment.

In accordance with the jury's findings on the patent issues, including willful infringement, the district court enhanced the dam-ages for patent infringement by fifty percent, resulting in a total award of $5,707,500. *See* 35 U.S.C. § 284 (1994) (permitting enhancement of damages up to three times the amount assessed). The district court denied Biomet's motion for judgment as a matter of law (JMOL) on the patent issues. The court further determined that the patent was not unenforceable. Finally, the court granted Biomet's motion for JMOL with respect to the state law claims, dismissing with prejudice the unjust enrichment count and capping the total recovery available to avoid double recovery at $7,134,000 in compensatory damages and $20,000,000 in punitive damages.

## DISCUSSION

◼ We review a denial of a motion for JMOL *de novo* by reapplying the JMOL standard. *See Read Corp. v. Portec, Inc.,* 970 F.2d 816, 821, 23 USPQ2d 1426, 1431 (Fed.Cir.1992); *see also* Fed. R. Civ. Proc. 50(b). Thus, we will reverse a denial of a motion for JMOL only if the jury's factual determinations are not supported by substantial evidence or the legal conclusions implied from the verdict cannot be supported in law by those findings. *See Kearns v. Chrysler Corp.,* 32 F.3d 1541, 1547–48, 31 USPQ2d 1746, 1751 (Fed.Cir.1994).

## I.

For a claim in a later-filed application to be entitled to the filing date of an earlier application under 35 U.S.C. § 120 (1994), the earlier application must comply with the written description requirement of 35 U.S.C. § 112, ¶ 1 (1994). *See Lockwood v. American Airlines, Inc.*, 107 F.3d 1565, 1571, 41 USPQ2d 1961, 1965–66 (Fed.Cir.1997). Section 112, paragraph 1 requires that the specification "contain a written description of the invention, and of the manner and process of making and using it ." To meet this requirement, the disclosure of the earlier application, the parent, must reasonably convey to one of skill in the art that the inventor possessed the later-claimed subject matter at the time the parent application was filed. *See Vas–Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563, 19 USPQ2d 1111, 1116 (Fed.Cir. 1991); *see also Hyatt v. Boone*, 146 F.3d 1348, 1354–55, 47 USPQ2d 1128, 1132 (Fed. Cir.1998). A disclosure in a parent application that merely renders the later-claimed invention obvious is not sufficient to meet the written description requirement; the disclosure must describe the claimed invention with all its limitations. *See Lockwood*, 107 F.3d at 1572, 41 USPQ2d at 1966. Because the issue of whether the written description requirement has been satisfied is a question of fact, we must determine whether substantial evidence supports the jury's verdict that the requirement has been met. *See Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 865, 26 USPQ2d 1767, 1774 (Fed.Cir.1993).

Biomet asserts that claims 1 and 9 of the '262 patent are not entitled to the filing date of the parent application and consequently that intervening prior art anticipates these claims.[1] Specifically, Biomet argues that the '589 patent's specification describes only one cup—a conical cup—and thus does not provide sufficient support for claims 1 and 9, which are generic as to the shape of the cup. Thus, Biomet contends that claims 1 and 9 are not entitled to the benefit of the parent application's earlier filing date and are anticipated under 35 U.S.C. § 102(b) (1994) by intervening prior art, including Tronzo's British application which was published on December 4, 1985, more than one year before the filing of the CIP application resulting in the '262 patent, and which was the counterpart to his U.S. application that yielded the '589 patent.[2]

Tronzo responds that claims 1 and 9 are generic claims as to the shape of the cup and that the '589 patent's specification need only describe a sufficient number of species of cups to support the generic claim. Tronzo asserts that the '589 patent discloses six species of acetabular cup implants, which is sufficient support.

The patentee has conceded that intervening prior art would anticipate claims 1 and 9.[3] Thus, the only issue is whether claims 1 and 9 are entitled to the earlier filing date of the parent application. We conclude that substantial evidence does not support the conclusion that the '589 patent specification meets the written description requirement relative to claims 1 and 9 of the '262 patent. Accordingly, these claims are not entitled to the parent application's filing date.

---

1. Biomet concedes that claims 2 and 10 are adequately supported by the specification of the '589 patent and thus are entitled to the earlier filing date.

2. Biomet also asserts that intervening sales of the accused device should also constitute invalidating, intervening prior art. The district court, however, refused to consider this argument because Biomet had failed to timely raise it. Because Biomet has not demonstrated error in the district court's decision to bar the argument, we also do not reach this contention. *See Austin–Westshore Constr. Co. v. Federated Dep't Stores, Inc.*, 934 F.2d 1217, 1222 (11th Cir.1991); *see*

*also Holmes v. United States*, 85 F.3d 956, 963 (2d Cir.1996).

3. Although the basis of the patentee's concession of intervening prior art is not evident from the record, we note that the CIP application disclosed for the first time generically-shaped implant bodies. *See* '262 Patent, col. 5, ll. 30–31 (disclosing an implant body having "a spherical, conical, trapezoidal, or other suitable outer surface"); *id.* at col. 10, ll. 12–13 (disclosing an implant body having "a semi-circular external shape, or another suitable shape"); *see also Vas–Cath*, 935 F.2d at 1562, 19 USPQ2d at 1115; *In re Lukach*, 442 F.2d 967, 969–70, 169 USPQ 795, 797 (CCPA 1971).

The '589 patent describes the invention as a "trapezoid," a "truncated cone," or a cup of "conical shape." '589 Patent, col. 3, 1. 63, col. 4, ll. 22–23. A reading of the specification demonstrates that these labels describe the *same* cup, and not three different species as asserted by Tronzo. Indeed, contrary to Tronzo's assertions, the '589 patent discloses only two species of cups: an "eccentric cup," which has a top lip shorter than the bottom lip, and a "true" cup, with all sides being equal. *See id.* at col. 5, ll. 3–10.

Moreover, the only reference in the '589 patent's specification to different shapes is a recitation of the prior art. *See id.* at col. 1, ll. 13–24 & 45–49. Instead of suggesting that the '589 patent encompasses additional shapes, the specification specifically distinguishes the prior art as inferior and touts the advantages of the conical shape of the '589 cup. *See, e.g., id.* at col. 3, ll. 63 ("Another extremely important aspect of the present device resides in the configuration of the acetabular cup as a trapezoid or a portion of a truncated cone."). Such statements make clear that the '589 patent discloses *only* conical shaped cups and nothing broader. The disclosure in the '589 specification, therefore, does not support the later-claimed, generic subject matter in claims 1 and 9 of the '262 patent.

The expert testimony offered at trial does not require a contrary conclusion. Tronzo's expert, Dr. Catanzaro, testified that hemispherical cups are disclosed in the '589 patent's specification, identifying two sections in the '589 patent supposedly making such a disclosure. As recognized by the district court, however, the first section referred to by Dr. Catanzaro as a sufficient disclosure served the narrow purpose of reviewing the prior art and did not describe the invention. *See id.* at col. 1, ll. 13–17. The second section identified by Dr. Catanzaro described "hemispheroidal" position maintaining devices, *see id.* at col. 1, ll. 46–52, but Dr. Catanzaro later conceded that this section did not refer to the shape of the patented cup.

Indeed, the district court recognized that "the written description in the parent '589 does not attempt to identify other, equally functional shapes or talk in terms of a range of shapes...." The court concluded that "the narrow language of the '589 application cannot be said to disclose expressly either the particular hemispherical shape of the '262 claims or the entire genus of cups within which the conical cup of the '589 claims and the hemispherical cup of the '262 claims belong." The district court nevertheless determined that the jury's conclusion could be supported because the '589 patent's specification inherently contained a disclosure sufficient to meet the written description requirement of § 112, ¶ 1.

The only evidence claimed as supporting an inherent disclosure, however, is the testimony of Norman Torchin, another Tronzo expert. Torchin testified that when the inventor stated at column 4, lines 34–38 of the '589 patent that "[a]propos of this, the present concept or invention differs completely from the blades as shown, for example, in prior U.S. Pat. No. 3,840,904" the inventor meant that "the difference is in the blade as opposed to the structure of the cup, although [the inventor] does prefer the conical cup."

In order for a disclosure to be inherent, however, the missing descriptive matter must necessarily be present in the parent application's specification such that one skilled in the art would recognize such a disclosure. *See Continental Can Co. USA v. Monsanto Co.*, 948 F.2d 1264, 1268, 20 USPQ2d 1746, 1749 (Fed.Cir.1991). There is nothing in the '589 specification to suggest that shapes other than conical are necessarily a part of the disclosure. Indeed, as discussed above, the specification clearly suggests the contrary by asserting advantages of the conical shape over prior art shapes. The rationale of Tronzo's expert claimed to support inherency is not sufficient to support the generic claims in the '262 patent. *See In re MacLean*, 454 F.2d 756, 759, 172 USPQ 494, 497 (CCPA 1972) ("Certainly the single exemplary disclosure of using 93% by weight water in the liquid phase provides no support or description of the recited range 'preponderantly water,' i.e. anything above 50% by weight."). Torchin's testimony does not explain why a broader supporting disclosure is necessarily

part of the '589 patent. We also agree that the district court properly rejected Torchin's reliance on an incorporation by reference of a prior Tronzo patent as supporting inherency.

Finally, relevant expert testimony of Biomet's witness, Dr. Hill, who testified that in his view as an orthopedic surgeon the '589 patent disclosed only a trapezoidal cup and nothing more is consistent with the express language in the '589 specification.

Accordingly, because the specification of the '589 patent fails to meet the written description necessary to support claims 1 and 9 of the '262 patent, these claims are not entitled to the filing date of the parent application and are invalid as anticipated by the intervening prior art.

## II.

The remaining claims at issue, claims 2 and 10, were found to be infringed under the doctrine of equivalents. An accused device may infringe under the doctrine of equivalents only if it possesses all of the limitations of the relevant claim either literally or equivalently. *See Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 117 S.Ct. 1040, 1054, 137 L.Ed.2d 146 (1997). Whether an element of the accused device is equivalent to a claim limitation depends on "whether the substitute element matches the function, way, and result of the claimed element, or whether the substitute element plays a role substantially different from the claimed element." *Id.* If a theory of equivalence would vitiate a claim limitation, however, then there can be no infringement under the doctrine of equivalents as a matter of law. *See id.* 117 S.Ct. at 1049, 1053 n. 8.

Biomet argues that infringement of claims 2 and 10 under the doctrine of equivalents by a hemispherical cup would vitiate the limitation requiring that the cup have a "generally conical outer surface." Tronzo responds that substantial evidence supports the jury's conclusion that a hemispherical shape is equivalent to a generally conical shape.

We are convinced that the evidence offered did not adequately establish legal equivalency of the hemispherical shape. While the evidence tended to demonstrate that the shape of the cup was irrelevant to achieving the desired result and that after successful implantation any shape would function essentially the same way, it also indicated that various shapes could produce "forces that might be different." Thus, Tronzo's expert, Dr. Catanzaro, testified that

> when either a hemispherical cup or trapezoidal cup *or any other shape* cup is successfully implanted into the body, it functions almost exactly the same way. Now, you can measure forces that might be different in various shapes, but don't forget, once these things are incorporated by the body, the body doesn't look at the shape of the cup, all it is looking at is a ball rotating inside a piece of plastic, because both these things are now part of the body.

(Emphasis added). This testimony as to function and way is merely conclusory on the legal issue to be decided. According to the expert testimony, *any* shape would be equivalent to the conical limitation of claims 2 and 10. Such a result is impermissible under the all-elements rule of *Warner–Jenkinson* because it would write the "generally conical outer surface" limitation out of the claims. *See* 117 S.Ct. at 1053 n. 8. Accordingly, the accused cup cannot infringe claims 2 and 10 under the doctrine of equivalents as a matter of law.

## III.

At trial, the jury additionally found Biomet liable for fraud, and for breach of a confidential relationship, under Florida law. Under the fraud count, Tronzo asserted that Biomet had promised to pay Tronzo a royalty if he obtained a patent protecting his implant. Tronzo claimed detrimental reliance on this promise in pursuing patent protection and asserted that Biomet never intended to fulfill its promise. Tronzo thus contended that Biomet was liable for fraud. Under the breach of confidentiality count, Tronzo argued that Biomet disclosed his design to others in breach of a confidential relationship between himself and Biomet.

Biomet challenges the jury's verdict regarding liability and damages under these state law claims. As to liability, Biomet as-

serts a litany of challenges to the legal standards applied by the district court and to the adequacy of the evidence supporting the jury's factual determinations. We discern neither legal errors by the district court nor a lack of substantial evidence supporting the jury's verdict regarding liability.

■ Biomet also challenges the award of either a constructive trust of Biomet's profits or a reasonable royalty to Tronzo under the state law claims because, in Biomet's view, neither is causally related to Tronzo's actual injury. Tronzo responds that a constructive trust is an appropriate remedy under Florida law for either of the state law claims and that there is substantial evidence to support the jury's verdict under either theory.

■ In order for an award of damages to be proper, there must be some nexus between the damages claimed and the injury incurred. *See Rucker v. Garlock, Inc.,* 672 So.2d 100, 102 (Fla.Dist.Ct.App.1996). Under Florida tort law, the damages awarded should place the plaintiff in the position he would have been absent the tortious conduct. *See Phillips v. Ostrer,* 481 So.2d 1241, 1246 (Fla.Dist.Ct.App.1985); *Ashland Oil, Inc. v. Pickard,* 269 So.2d 714, 723 (Fla.Dist.Ct.App. 1972); *see also* Restatement (Second) of Torts § 549 cmt. g (1977) ("[T]he purpose of a tort action is to compensate for the loss sustained and to restore the plaintiff to his former position, and not to give him the benefit of any contract he has made with the defendant.").

We conclude that the award of lost profits (as a constructive trust) or a reasonable royalty as damages for the torts asserted is inappropriate because it does not properly reflect Tronzo's actual injury. The district court noted, regarding the fraud claim, that

> [w]hile Biomet's argument that a patent is not a detriment has perhaps a superficial appeal, it neglects the costs to Dr. Tronzo of seeking his patent, defending it on reexamination, and of foregoing opportunities to pursue relationships with other

companies or to pursue other means for bringing his acetabular cup to market.

While we agree with this characterization of the injury to Tronzo, such injury is not related to the lost profits damages awarded in this case. Nor do we see how, under the breach of confidentiality claim, Tronzo would have been injured in a way to entitle him to such damages. Instead, the award seems more akin to a remedy for breach of contract instead of either of the alleged torts. *See Ashland,* 269 So.2d at 723 ("[P]laintiffs recovered out-of-pocket expenses … plus loss of profits on their sales. *This would ordinarily be an impermissible double recovery.* However, such an award is permissible where plaintiffs pursue an action both for deceit and breach of contract.") (emphasis added).

■ Moreover, the use of a constructive trust is inappropriate in these circumstances. Generally, to impose a constructive trust, there must be an express or implied promise, a transfer of property in reliance thereon, a confidential relationship, and unjust enrichment. *See Abreu v. Amaro,* 534 So.2d 771, 772 (Fla.Dist.Ct.App.1988). The purpose of this equitable remedy is both to prevent unjust enrichment and to restore property to its rightful owner. *See id.* Here, the only transfer of "property" that occurred in reliance on Biomet's promise was the transfer of information. The lost profits cannot properly be considered to be the rightful property of Tronzo—he never possessed such money or transferred it to Biomet. Thus, a constructive trust remedy is inappropriate in this case.[4]

We also note that upon the record before us there is no evidence to prove any of the costs and injuries incurred by Tronzo, such as the costs of prosecuting the patent and lost business opportunities. Thus, we remand to the district court to determine whether such evidence was presented and, if not, whether in the district court's discretion it would be appropriate to take new evidence in this regard.

---

4. Additionally, such a remedy is only appropriate if there are no adequate remedies at law. *Bender v. Centrust Mortgage Corp.,* 51 F.3d 1027, 1030 (11th Cir.1995) (applying Florida law). In our view, allowing Tronzo to recover only his actual injuries will provide adequate redress.

CONCLUSION

We have considered Biomet's other arguments on appeal and find them without merit. We reverse the district court's judgment that claims 1 and 9 are not invalid and that claims 2 and 10 are infringed under the doctrine of equivalents. Given our conclusions regarding invalidity and noninfringement, we do not reach the issues of inequitable conduct or the invalidity of claims 2 and 10. We affirm the district court's judgment of liability under the state law claims but vacate and remand for the district court to determine an appropriate award of damages in accordance with this opinion.

*AFFIRMED–IN–PART, REVERSED–IN–PART, VACATED–IN–PART AND REMANDED.*

PAULINE NEWMAN, Circuit Judge, concurring in the judgment.

I concur in the judgment that claims 1 and 9 of the '262 patent are invalid on the ground of obviousness, in view of the references to Deyerle and McBride. However, the panel majority has erred in its treatment, as "anticipating" prior art under section 102(b), of Dr. Tronzo's own British counterpart of his United States parent application. The disclosure in the British patent is identical to that of the earlier-filed United States parent application; nonetheless, the panel majority treats the British patent as invalidating prior art. However, the patentee is entitled to the benefit of the prior filing of the parent United States application for the subject matter contained therein. Without the improperly relied-upon British counterpart, the rejection based on "anticipation" can not stand.

A continuation-in-part application relates back to its parent's filing date for the common subject matter. Since the intervening publication of the common subject matter is antedated by the United States parent application, the British counterpart is neither an "anticipating" reference nor a statutory bar against the continuation-in-part application. The publication of the British counterpart of Dr. Tronzo's parent application does not deprive him of the benefit of the filing date of the parent application for the subject matter of the parent application.

The contrary holding of the panel majority will have a dramatic adverse effect on continuation-in-part practice. The ruling that the disclosure in an inventor's parent application becomes prior art against a continuation-in-part application, when it is published before the filing of the continuation-in-part application, is a new and pernicious burden on inventors who seek early entry into the patent system while continuing to investigate the subject of their invention.

The issue of relating back to a parent filing date is different from the issue of constructive reduction to practice of generic claims in the continuation-in-part. There is no issue in this case of determining priority of invention. The issue is whether a patentee can rely on the filing of subject matter in a parent application in order to predate the later publication of that subject matter. According to the court's ruling today, the patentee loses the entire benefit of that earlier filing whenever a continuation-in-part is filed with additional data and broadened claims based in part on that data. That is, the patentee's own prior disclosure now becomes prior art against him. That is new, and incorrect, law. A later publication can not "anticipate" what is already on file; to the contrary, the later publication is removed as a reference by the identical earlier filing in the United States.

The purpose of the continuation-in-part is to permit an applicant to add new information and data, while retaining the benefit of the original filing date for what was originally filed. Many applicants obtain foreign patents based on the original filing, because of the first-to-file rule in foreign countries and the comity rules of the Paris Convention; some countries publish patents within a few months of their filing. With the court's holding today, such foreign patents are a statutory bar if the continuation-in-part is filed more than a year after the publication of the foreign counterpart. Thus the patentee is deprived of the benefit of the earlier filing in the United States, whenever new matter and broader claims are added by continuation-in-part. This destruction of the continuation-in-part practice is contrary to law and to the public interest. Thus I must, respectfully,

dissent from the reasoning relied on by the panel majority.