**VAN BLARCOM CLOSURES, INC., Plaintiff,**

v.

**OWENS–ILLINOIS, INC., Defendant.**

No. 04 CV 1993(RDJ)(SMG).

United States District Court, E.D. New York.

Aug. 24, 2007.

---

Jeremy A. Kaufman, Martin B. Pavane, Lisa Ferrari, Roger Sherman Thompson, Cohen, Pontani, Lieberman, & Pavane, New York, NY, for Plaintiff.

Douglas A. Freedman, Kevin C. May, Nicholas Benjamin Gorga, Latham & Watkins, LLP, Chicago, IL, William V. Reiss, Latham & Watkins, New York, NY, for Defendant.

## MEMORANDUM & ORDER

RAYMOND J. DEARIE, Chief Judge.

Plaintiff Van Blarcom Closures, Inc. sues defendant Owens–Illinois, Inc. for infringement of U.S. Patent No. 5,579,934, a convertible child-proof cap. The parties have stipulated to the construction of the claim language. Plaintiff now moves for summary judgment under the doctrine of equivalents. Defendant cross-moves for summary judgment of non-infringement based on the doctrine of vitiation and also seeks additional discovery under Federal Rule of Civil Procedure 56(f). The central issue in these motions is whether defendant's child-proof closure, which contains abutments on the cover wall of its outer cap, infringes plaintiff's patent, claim 1 of which specifies that abutments are located on the side wall of the outer cap.

The Court referred the motions to Magistrate Judge Steven M. Gold for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). On November 6, 2006, Magistrate Judge Gold recommended that defendant's motion for summary judgment be granted because a finding of infringement under the doctrine of equivalents would vitiate the claim limitation requiring that the abutments be located on the side as opposed to the cover wall of the outer cap. In addition, Magistrate Judge Gold recommended that the other motions be denied as moot. On November 30, 2006, plaintiff filed objections to the Report, and defendant responded on December 22, 2006. After reviewing the record *de novo*, the Court adopts Magistrate Judge Gold's recommendation in its entirety and without qualification.

Plaintiff's lengthy objections revisit arguments raised in prior filings and at oral argument. Magistrate Judge Gold's well-considered Report treats these arguments in a comprehensive manner. Plaintiff also cites *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.,* 469 F.3d 1005 (Fed.Cir.2006), a decision that post-dates Magistrate Judge Gold's Report, to support its argument that Magistrate Judge Gold should have focused narrowly on the distance separating the position of the side wall abutments provided for by plaintiff's patent from the position of the cover wall abutments in defendant's device. However, nothing in *Depuy Spine* mandates that a vitiation analysis must center on the factual similarity of the claimed element and the accused element to the exclusion of other factors relied on by courts in vitiation cases, including the simplicity of the device, the clarity and specificity of the claim language, the foreseeability of variations at the time the claim was filed, and whether the difference between the claimed element and the accused element is one of kind or merely of degree. *See Freedman Seating Co. v. American Seating Co.,* 420 F.3d 1350, 1359–62 (Fed.Cir. 2005) (discussing the "totality of the circumstances" approach and the above factors). While the *Depuy Spine* court stated that the evidence presented in certain cases may be insufficient to permit a finding of equivalence, the court also affirmed that in other cases a patentee's "theory of equivalence" may be "legally insufficient because, rather than demonstrate an insubstantial difference between a limitation and an element in the accused device, the theory effectively eliminate[s] a limitation in its entirety." 469 F.3d at 1017. The Federal Circuit reiterated this principle once again as recently as January 5, 2007 in *Abbott Laboratories v. Andrx Pharmaceuticals, Inc.,* 473 F.3d 1196, 1212 (Fed. Cir.2007). Here, Magistrate Judge Gold found that plaintiff's proffered theory of equivalence was legally insufficient because it entirely removed the limitation of side wall abutments from claim 1 of plaintiff s patent. This finding is consistent with Federal Circuit precedent.

Upon *de novo* review, the Court thus agrees with Magistrate Judge Gold's recommendation that defendant's motion for summary judgment be granted and that plaintiff's motion for summary judgment and defendant's request to take additional discovery be denied as moot. Plaintiff's infringement claim is dismissed.

SO ORDERED.

## REPORT & RECOMMENDATION

STEVEN M. GOLD, United States Magistrate Judge.

### INTRODUCTION

Plaintiff, Van Blarcom Closures, Inc. (VBC), brings this action against defendant Owens–Illinois, Inc. (OI), for infringement of U.S. Patent No. 5,579,934 (the '934 patent). The '934 patent is for a convertible child resistant container cap. The parties have agreed by stipulation to the proper construction of the claim language. VBC now moves for summary judgment of infringement under the doctrine of equivalents. OI opposes VBC's motion by seeking additional discovery under Federal Rules of Civil Procedure 56(f), and cross-moves for summary judgment of non-infringement based on the doctrine of vitiation. I heard oral argument on the motions on October 18, 2006. For the reasons set forth below, I respectfully recommend that OI's motion for summary judgment of non-infringement as a matter of law based on the vitiation doctrine be granted. In light of that recommendation, I further recommend that VBC's motion

for summary judgment and OI's response pursuant to 56(f) be denied as moot.

## BACKGROUND

The subject of the '934 patent is a convertible child-proof cap ("Cap I"). Buono Decl. ¶ 3. The cap was designed to remedy the problem that individuals who have "suffered a loss of manual dexterity" sometimes encounter when attempting to open child proof bottles. Nicholas B. Gorga Aff, Ex. 1., Docket Entry 97; '934 patent, Col. 1, ll. 20–26. Due to this problem, those individuals often request a non-child resistant cap or leave the tops off of bottles, which defeats the purpose of a child resistant cap altogether. *Id.* The '934 patent also states that previous attempts to solve this problem through convertible devices were ineffective or too complex. *Id.,* ll. 45–67.

The closure claimed in the '934 patent was designed to be easily and effectively set to either a child resistant configuration or a non-child resistant configuration. *Id.,* Col. 2, ll. 1–5. When in the child resistant mode, the cap will twist off the container only when a user pushes down on it. Buono Decl. ¶ 6. In the latter configuration, the cap will open when it is simply twisted. *Id.*

Cap I and the way it functions are clearly described in claim 1 of the '934 patent. This claim contains the language at issue in the motions currently before the court. It reads, with the pertinent language italicized, as follows:

1. A convertible child resistant closure for use with a container having a threaded portion and an axis extending there through about which said closure is rotatable, said closure comprising:

an inner cap including:

a cover wall; and

a circumferential side wall extending from said cover wall and having an inner surface with a threaded portion for engagement with the threaded portion of the container, and an outer surface including a child resistant portion comprising a series of angular abutments extending thereabout and a non-child resistant portion axially offset from said first child resistant portion and including a row of longitudinally extending knurlings; and

*an outer cap including:*

*a second cover wall; and*

*a second circumferential side wall extending axially from said second cover wall and having a second inner surface provided with a second child resistant region including a plurality of angular abutment surfaces complementary to said series of angular abutments on said inner cap* and a second non-child resistant region axially offset from said second child resistant region and including a second row of longitudinally extending knurlings complementary to said plurality of knurlings on said inner cap, said inner cap being coaxially positioned and nested within said outer cap and axially movable between said second child resistant region and said second non-child resistant region, and when in said second child resistant region said plurality of angular abutment surfaces engage said series of angular abutments upon rotation of said outer cap to rotate said inner cap in said closing direction and in the absence of an axial force, cam over and past said series of angular abutments upon rotation of said outer cap member in said opening direction to prevent rotation of said inner cap, and when in said second non-child resistant region said second row of knurlings are interengaged with said first row of knur-

lings so that upon rotation of said outer cap in both said opening and closing directions said inner cap turns.

Put more simply, the patent specification and claims indicate that Cap I may be converted from child resistant to non-child resistant by adjusting the relative positions of its two interlocking caps, an inner cap and an outer cap. '934 patent, Col. 3, ll. 26–32. Both the inner cap and the outer cap are "defined by a cover wall and a side wall or skirt depending from the cover wall." *Id.*, Col. 2, ll. 27–37. As the common meaning of these phrases makes clear and as the parties have stipulated, the cover wall forms the "top wall" of each cap, and the side wall extends down in a perpendicular direction from the cover wall to form the side of the cap. The parties' stipulation further states that the side wall "may not include a radially inwardly extending portion that extends over the threaded portion of the container." Stipulation Resolving Parties' Dispute Over Claim Construction at 3, Docket Entry 60.

The inner surface of the inner cap has a threaded portion to allow it to screw on to the top portion of a container or medicine bottle. '934 patent, Col. 7, ll. 58–61. The outer surface of the inner cap has a child resistant region comprised of a series of angular abutments on its side wall. *Id.*, ll. 61–62. Extending down the side wall from the child resistant region is a non-child resistant region comprised of a row of knurlings or ridges. *Id.*, Col. 7, ll. 63–64, Col. 8, ll. 1–2. The outer cap is similarly designed. Its side wall also has a child resistant region comprised of a series of angular abutments and a non-child resistant area with a set of knurlings or ridges. *Id.*, Col. 8, ll. 3–18.

When Cap I is in the child resistant configuration, it will open only if a user pushes down on it and twists. The down-

ward force causes the complementary sets of angular abutments on the inner and outer caps to lock together and turn as one. *Id.*, Col. 8, ll. 19–32. If the cap is twisted but no downward force is applied, the outer cap will move, but the inner and outer cap abutments will not engage, and the inner cap will remain still. *Id.* When the cap is set to the non-child resistant configuration, the knurlings on the inner and outer caps lock the two caps together so the whole cap turns as one simply by twisting. *Id.*

The accused device ("Cap II") is similar to Cap I. Cap II also has an inner cap and an outer cap that may be set to either a child resistant or non-child resistant configuration. Buono Decl. ¶ 9. The outer cap of Cap II, like the claimed invention, has abutments that engage abutments on the inner cap, allowing the outer cap to turn the inner cap in the child resistant setting when downward force is applied. *Id.* ¶¶ 15–19. However, Cap II's outer cap has abutments on its cover wall, whereas the patent describes an outer cap with side wall abutments.

The sole issue raised by the pending motions is whether the defendant's cap, with abutments on the cover wall of its outer cap, infringes plaintiff's patent, which claims abutments on the side wall of its outer cap. Plaintiff alleges infringement under the doctrine of equivalents. I conclude that plaintiff's claim of equivalents infringement is precluded as a matter of law because it would vitiate the clear and specific language of claim 1 of the '934 patent.

### DISCUSSION

■ To determine whether an accused device infringes a patent, a court first construes the patent claims, and then compares the claims to the accused device. *Lockheed Martin Corp. v. Space Sys./Lor-*

*al, Inc.*, 324 F.3d 1308, 1318 (Fed.Cir. 2003). Here, the claims have already been construed. The analysis below therefore focuses on the comparison of the claims made in the '934 patent to the characteristics of the OI cap.

### i.) The Doctrine of Equivalents

■ A patent may be infringed either literally or under the "doctrine of equivalents." *See Graver Tank & Mfg Co., Inc. v. Linde Air Prods. Co.*, 339 U.S. 605, 607–08, 70 S.Ct. 854, 856–57, 94 L.Ed. 1097 (1950). Plaintiff has acknowledged that "it will not assert literal infringement of the claim limitation requiring the angular abutment surfaces to be on the side wall." Pl.'s Response to Def.'s Statement of Undisputed Facts Pursuant to Rule 56.1 ¶ 2., Docket Entry 99. Thus, the pending motions concern only plaintiff's claim of infringement under the doctrine of equivalents.

The doctrine of equivalents has deep roots in patent law. *See Winans v. Denmead*, 56 U.S. 330, 15 How. 330, 14 L.Ed. 717 (1853).[1] One of the Supreme Court's recent, more significant pronouncements on the doctrine of equivalents described its application as follows: "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner–Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21, 117 S.Ct. 1040, 1045, 137 L.Ed.2d 146 (1997). The court stated that "[t]he substantial equivalent of a thing, in the sense of patent law, is the same as the thing itself; so that if the two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape." *Id.* at 35, 117 S.Ct. 1040, *quoting Union Paper–Bag Mach. Co. v. Murphy*, 97 U.S. 120, 125, 7 Otto 120, 24 L.Ed. 935 (1878).

■ The claims of a patent are meant to "particularly poin[t] out and distinctly clai[m] the subject matter which the applicant regards as his invention." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 373, 116 S.Ct. 1384, 1388, 134 L.Ed.2d 577 (1996), *quoting* 35 U.S.C. § 112. The claim "define[s] the scope of a patent grant and functions to forbid not only exact copies of an invention, but products that 'go to the heart but avoid [ ] the literal language of the claim by making a noncritical change.'" *Id.* at 373–74, 1388, 116 S.Ct. 1384, *citing* Schwartz, Patent Law and Practice 82 (2d ed.1995) (internal citations omitted). Thus, the claim plays a critical role in the public notice function of patents, which is to "inform the public during the life of the patent of the limits of the monopoly asserted, so that it may be known which features may be safely used or manufactured without a license and which may not." *Permutit Co. v. Graver Corp.* 284 U.S. 52, 60, 52 S.Ct. 53, 55, 76 L.Ed. 163 (1931).

---

1. The doctrine, although significantly narrowed and reshaped by subsequent case law, was developed on the theory that:

   [w]here form and substance are inseparable, it is enough to look at the form only. Where they are separable; where the whole substance of the invention may be copied in a different form, it is the duty of courts and juries to look through the form for the substance of the invention-for that which entitled the inventor to his patent, and which the patent was designed to secure; where that is found, there is an infringement; and it is not a defence, that it is embodied in a form not described, and in terms claimed by the patentee.

   *Winans*, 56 U.S. at 343, 15 How. 330.

■ In contrast, the doctrine of equivalents, "by its very nature, extends beyond the patent's literal claim scope, because otherwise a finding of no literal infringement would be a foreordained conclusion of no infringement at all." *LG Elecs., Inc. v. Bizcom Elecs., Inc.*, 453 F.3d 1364, 1380 (Fed.Cir.2006). To preserve the essential functions of the claim language, courts have placed restrictions on the doctrine of equivalents. The importance of these restrictions was stressed by the Supreme Court in *Warner–Jenkinson;* although the Court refused a call to eliminate the doctrine of equivalents entirely, it emphasized its concern that the doctrine not be applied so broadly as to undermine the "definitional and public notice requirements of the statutory claiming requirement." *Warner–Jenkinson*, 520 U.S. at 29, 117 S.Ct. at 1049.

Cases following *Warner–Jenkinson* have applied the doctrine of equivalents carefully and with an eye toward properly observing the restrictions on it, namely: "(1) the so-called 'all elements rule,' and (2) the doctrine of prosecution history estoppel." *Ethicon Endo–Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1316 (Fed.Cir. 1998) (citations omitted); *see also Lockheed*, 324 F.3d at 1318. However, the Federal Circuit has, at the same time, cautioned that these restrictions must not be applied so stringently as to "swallow the doctrine of equivalents, reducing the application of the doctrine to nothing more than a repeated analysis of literal infringement." *Ethicon*, 149 F.3d at 1317.

■ The all elements rule requires that "every element of a claim" must be "literally or equivalently present in the accused device." *Sage Prods., Inc. v. Devon Industries, Inc.*, 126 F.3d 1420, 1423 (Fed. Cir.1997).[2] *See also Ethicon*, 149 F.3d at 1316; *Pennwalt Corp. v. Durand–Wayland, Inc.*, 833 F.2d 931, 935 (Fed.Cir. 1987). The all elements rule is also referred to as the "all limitations rule." *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1358 (Fed.Cir.2005).

Defendant relies upon a particular restriction on equivalents infringement it identifies as the "vitiation doctrine," which is part of the all elements rule. The Supreme Court referred approvingly to the vitiation restriction on equivalents infringement in *Warner–Jenkinson*, 520 U.S. at 29–30, 117 S.Ct. at 1049.

■ The vitiation doctrine provides that "[i]f a theory of equivalence would vitiate a claim limitation [ ], then there can be no infringement[.]" *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1160 (Fed.Cir.1998). The Federal Circuit has described this rule as necessary to prevent the application of the doctrine of equivalents from reducing claims "to functional abstracts, devoid of meaningful structural limitations on which the public could rely." *Sage*, 126 F.3d at 1424. Moreover, the Supreme Court has directed lower courts to "focus on individual elements" of patent claims and exercise "special vigilance against allowing the concept of equivalence to eliminate completely any such elements." *Warner–Jenkinson*, 520 U.S. at 40, 117 S.Ct. at 1054.

2. The doctrine of prosecution history estoppel, a second restriction on the doctrine of equivalents, is not implicated by the parties' motions. This doctrine states that, where certain methods or devices were specifically removed or excluded by amendment from the patent claim during prosecution with the Patent and Trademark Office ("PTO"), they generally may not later be asserted as part of the claims for purposes of establishing infringement under the doctrine of equivalents. *Warner–Jenkinson*, 520 U.S. at 31, 117 S.Ct. at 1049–50. *See also, Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 735–36, 122 S.Ct. 1831, 1839–40, 152 L.Ed.2d 944 (2002).

■ The vitiation doctrine prevents a skilled patent drafter who clearly and explicitly states the elements of his claims from later seeking coverage over a device without those precise elements under the doctrine of equivalents. *Id.* Thus, courts have held that the doctrine of equivalents cannot apply where a claim calls for a slot at the top of a container and the accused device has the slot inside the container; where the claim calls for a majority of part of an envelope to have adhesive and the accused device has adhesive only on a minority (47.8%) of that part of the envelope; and where a claimed artificial hip structure calls for a conical cup and an accused device has a hemispherical cup. *Sage,* 126 F.3d at 1424; *Moore U.S.A., Inc. v. Standard Register Co.,* 229 F.3d 1091, 1106 (Fed.Cir.2000); *Tronzo,* 156 F.3d at 1160.

■ As the discussion above suggests, there is a tension between the doctrine of equivalents and the vitiation doctrine. To find equivalents infringement, a court must look beyond the literal language of a claim and consider whether the accused device has a component or characteristic that is the functional equivalent of an element of the patent claim. Conversely, the vitiation doctrine requires the court to pay primary attention to the claim language and dismiss infringement allegations that would render that language meaningless or without significance.

■ The Federal Circuit seems to have struck a balance between these competing doctrines by identifying certain circumstances, such as when a patentee claims a simple, narrowly defined structure, in which the doctrine of equivalents may apply very narrowly, if at all. *See, e.g., Sage,* 126 F.3d at 1425–26. Indeed, the Federal Circuit has plainly stated that "[i]f our case law on the doctrine of equivalents makes anything clear, it is that all claim limitations are not entitled to an equal scope of equivalents." *Moore,* 229 F.3d at 1106.

In *Freedman Seating Co. v. Am. Seating Co.,* 420 F.3d at 1359, the Federal Circuit set forth what is perhaps its most specific enumeration of the circumstances in which the vitiation doctrine restricts the application of the doctrine of equivalents. The court in *Freedman* held that "[t]here is no set formula for determining whether a finding of equivalence would vitiate a claim limitation" and that courts must "consider the totality of the circumstances of each case and determine whether the alleged equivalent can be fairly characterized as an insubstantial change from the claimed subject matter without rendering the pertinent limitation meaningless." *Freedman,* 420 F.3d at 1359. *See also LG Elecs.,* 453 F.3d at 1380; *U.S. Philips Corp. v. Iwasaki Elec., Ltd.,* 2006 WL 2792693 at *10–11 (S.D.N.Y.2006). Applying this "totality of the circumstances" approach, the *Freedman* court identified a non-exclusive list of factors, including "the simplicity of the structure, the specificity and narrowness of the claim, ... the foreseeability of variations at the time of filing the claim with the PTO," and whether the difference between the claim element and the pertinent characteristic of the accused device is a difference in kind or degree. *Freedman,* 420 F.3d at 1360–61.

### ii.) Legal Standard

■ The applicability of the vitiation doctrine in a particular case is a question of law. *Seachange Int'l, Inc. v. C–COR, Inc.,* 413 F.3d 1361, 1378 (Fed.Cir. 2005). Thus, the Supreme Court and the Federal Circuit have held that summary judgment is appropriate when the court determines, as a threshold matter, that a finding of equivalents infringement would entirely vitiate a claim limitation. *Warner–Jenkinson,* 520 U.S. at 39, n. 8, 117 S.Ct. at 1053, n. 8; *Freedman,* 420 F.3d at

1358; *Lockheed,* 324 F.3d at 1320–21 (holding that a court must *first* conduct an analysis under the all elements rule before proceeding to the equivalents analysis); *Sage,* 126 F.3d at 1429. Where the court determines that a finding of equivalence would not vitiate the claim and proceeds to an analysis of the equivalence of two elements, summary judgment should be granted only if "the evidence is such that no reasonable jury could determine two elements to be equivalent." *Warner–Jenkinson,* 520 U.S. at 39, n. 8, 117 S.Ct. at 1053, n. 8. *See also* Fed.R.Civ.P. 56(c) (2006).

### iii.) Totality of the Circumstances

■ Applying the factors set forth in *Freedman* to the facts of this case compels the conclusion that plaintiff's theory of equivalents infringement is barred as a matter of law.

### A.) Simplicity

Courts have resisted finding infringement under the doctrine of equivalents when the claimed invention is a simple structural device that can be easily described in words. This is so because one justification for the doctrine of equivalents is that words often fail to do an invention justice.[3] *See Festo,* 535 U.S. at 731, 122 S.Ct. at 1837. Although this rationale clearly applies to complex technology that is difficult to describe in words, it is less compelling with respect to simple structures. Thus, in *Sage,* the Federal Circuit refused to find equivalents infringement, reasoning that the patent at issue claimed

a relatively simple structural device, and that "[n]o subtlety of language or complexity of the technology, nor any subsequent change in the state of the art, such as later developed technology, obfuscated the significance" of the claim limitation at the time the patent was drafted. *Sage,* 126 F.3d at 1425.

The invention in this case is a simple one that can be easily described with plain language and drawings. The language in the patent and the drawings accompanying it are clear, and unambiguously indicate that the outer cap abutments must be on the side wall. This is not a case where a failure of language or some other ambiguity suggests that application of the doctrine of equivalents is required to protect the patentee's intentions or to avoid fraud on the patent. Accordingly, this factor weighs heavily in favor of OI's vitiation argument.

### B.) Specificity

Courts are also more likely to find that the vitiation doctrine bars a finding of equivalents infringement when the structural limitations in the patent claim are clear and specific. As the *Sage* court held, if an invention is claimed narrowly and precisely, a patent holder cannot later expand his claims through the doctrine of equivalents. *Sage,* 126 F.3d at 1424–25.

The application of this factor is illustrated by the different results reached in two recent Federal Circuit decisions. In *Tronzo v. Biomet,* plaintiff claimed an artificial hip socket with a cup implant. The patent

---

**3.** An invention exists most importantly as a tangible structure or a series of drawings. A verbal portrayal is usually an afterthought written to satisfy the requirements of patent law. This conversion of machine to words allows for unintended idea gaps which cannot be satisfactorily filled. Often the invention is novel and words do not exist to describe it.

The dictionary does not always keep abreast of the inventor. It cannot. Things are not made for the sake of words, but words for things.

*Festo,* 535 U.S. at 731, 122 S.Ct. at 1837, *quoting Autogiro Co. of Am. v. U.S.,* 181 Ct.Cl. 55, 384 F.2d 391, 397 (1967).

claim described the cup as conical in shape. *Tronzo,* 156 F.3d at 1160. At trial, the defendant's hemispherical cup was found to infringe under the doctrine of equivalents. *Id.* The Federal Circuit reversed. Although the evidence at trial indicated that the specific shape of the cup did not impact its effectiveness, the Court held that finding that a cup with a non-conical shape infringed would vitiate the patent's clear cone-shaped limitation. *Id.* In reaching that holding, the court noted that the specification of the patent listed prior art references to cups with other shapes, and specifically touted the advantages of a conical cup. *Id.* at 1159. That fact, stated the court, made it clear that the patent disclosed *"only* conical shaped cups and nothing broader." *Id.* (emphasis in original). To find that a cup with another shape infringed would "write the 'generally conical outer surface' limitation out of the claims," a result that the all limitations rule as stated in *Warner–Jenkinson* does not permit. *Id.* at 1160. *See also SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.,* 242 F.3d 1337, 1346 (Fed.Cir. 2001) (holding that, "by defining the claim in a way that clearly excluded certain subject matter, the patent implicitly disclaimed the subject matter that was excluded and thereby barred the patentee from asserting infringement under the doctrine of equivalents").

A patentee's use of a less specific claim term led to a different result in *Primos, Inc. v. Hunter's Specialties, Inc.,* 451 F.3d 841, 843 (Fed.Cir.2006). *Primos* involved a mouth device used by hunters to simulate animal calls. The device contained a membrane that the user causes to vibrate and produce sound. *Id.* at 844. A shelf or plate above the membrane "provides a constant distance above the membrane and resists upward pressure by the [user's] tongue." *Id.* The accused device contained a "dome" above its membrane rather than a "plate." The Federal Circuit held that a finding of equivalents infringement would not vitiate the "plate" claim term because the "term 'plate' does not convey a definitive, geometric shape or structure[.]" *Id.* at 850.

The facts of this case are similar to those in *Tronzo.* The '934 patent claims provide a specific location—the side wall—for the outer cap abutments, and, although not touting the superiority of that location, the patent refers to at least one other invention that does contain cover wall abutments.[4] Moreover, the '934 patent claims make a stark distinction between the cover and side walls of the inner and outer caps. Claim one describes a closure "comprising: an inner cap including: a cover wall; and a circumferential side wall.; and an outer cap including a second cover wall; and a second circumferential side wall ..." '934 patent, Col. 7, l.55–Col. 8, l. 5. This cover wall/side wall distinction is reiterated in the specification as well. For example, the abstract refers to an "outer cap ... defined by a cover wall and a side wall depending from the cover wall," as does the summary of the invention. *Id.,* Col. 2, ll. 35–36.

In contrast to *Primos,* where the term "plate" could conceivably refer to either a

4. In the '934 patent, the plaintiff references patent No. 4,433,789 ('789 Patent). '934 patent at Ref. Cited. The '789 patent (reproduced as Exhibit 5 to the Declaration of Nicholas B. Gorga dated June 26, 2006) is also for a convertible child resistant cap having an inner cap and an outer cap. '789 patent, Col. 2, ll. 55–58. The outer cap consists of a

"circular top panel" and a "depending skirt portion." *Id.,* Col. 1, ll. 57–60. The "underside" of the "outer cap top panel" includes several "drive lugs" that are meant to engage with corresponding "ratchet lugs" on the outer top surface of the inner cap. *Id.,* Col. 1, ll. 45–65.

flat or dome-shaped structure, the claim limitation in this case does not contemplate any location other than the side wall. As in *Tronzo*, where a hemispherical cup could not be considered to be encompassed by a claim limitation requiring a conical shape, here there is no ambiguity or lack of specificity in the term "side wall" that could possibly encompass a cover wall.

In these respects, this case is also similar to *Moore v. Standard Register Co.*, 229 F.3d at 1106. The invention at issue in *Moore* was a pressure seal two-way mailer. *Id.* at 1094. The patent claim required that there be adhesive strips "extending the majority" of the length of a specified portion of the mailer. *Id.* at 1095. Defendant's accused mailer had adhesive strips extending over approximately 48% of the relevant portion. *Id.* at 1097. The Federal Circuit rejected plaintiff's claim of equivalents infringement without considering how close 48% is to being a majority because "to allow what is undisputedly a minority ... to be equivalent to a majority would vitiate the [claim] requirement." *Moore*, 229 F.3d at 1106. Because, like plaintiff in *Moore*, VBC has narrowly and precisely claimed a cap with abutments on the side wall of its outer cap, this factor also weighs heavily in favor of OI.

## C.) *Foreseeability*

If a skilled patent drafter should have foreseen the limiting potential of narrow and precise claim language, an equivalents analysis may be precluded. This consideration contributed to the result in *Freedman*, which involved a stowable seat for use in public transportation vehicles. *Freedman*, 420 F.3d at 1352. The patent described a seat that was "slidably mount-ed"; that is, the seat was supported by a mechanism that slid along its base as the seat was raised and folded out of the way. The accused product, in contrast, had a seat that was "rotatably mounted," or supported by a mechanism that rotated on a hinge as the seat was raised and put out of the way. *Id.* at 1361. In determining that a finding of equivalents infringement would vitiate the "slidably mounted" claim limitation, the court found it relevant that the invention involved "well-known technologies" and that the patentees were aware of various mechanisms that might be used to support the seat and allow it to be folded away. *Id.* The court therefore concluded that the patent's drafter undoubtedly foresaw that choosing to claim a seat that was "slidably mounted" would exclude, by definition, coverage over those seats employing well-known alternative mounting mechanisms. *Id.*

As in *Freedman*, the drafters of the '934 patent could easily have foreseen that claiming side wall abutments would surrender coverage over cover wall abutments. Previous patents for similar caps clearly distinguished between the cover wall and the side wall of the inner and outer caps.[5] '934 patent at References Cited. Moreover, as noted above, the '789 patent, referenced in the text of the '934 patent, specifically described an outer cap with "drive lugs" on its *"top panel"* (emphasis added). Nevertheless, the drafters of the '934 patent chose to use narrow claim language that specifically places the outer cap abutments on the side wall and not on the cover wall. It is difficult to believe that a skilled patent drafter could not have easily foreseen the limiting potential of such claim language. As the court

---

**5.** The '934 patent discloses two other similar inventions, patents No. 3,514,003 and No. 5,148,931. Both are convertible child resistant closures described by plaintiff as either ineffective in preventing opening by children or too complex for the consumer. '934 patent, Col. 1, ll. 35–67.

articulated in *Sage,* if the patentee had wanted broader protections, it would have sought a claim without such narrowly defined structural encumbrances. *Sage,* 126 F.3d at 1425.

### D.) *Substantiality of Differences and Differences in Kind Versus Degree*

Plaintiff relies heavily on the Federal Circuit's decision in *Ethicon* to argue that a court should not accept a vitiation defense when an accused device avoids literal infringement by making insubstantial changes to the claim elements. Plaintiff contends that *Ethicon* held that where, as here, an accused device merely relocates a claim element from the position identified in the patent, and the relocation is to a position insubstantially different from the one claimed in the patent, the vitiation doctrine does not bar equivalents infringement. More generally, plaintiff argues that a court must consider the substantiality, or extent, of the difference between the claimed element and an accused device as part of its overall analysis of infringement even when a vitiation defense is asserted. In contrast, defendant argues that the similarity between the structure defined by the claim language and the characteristics of an accused device is a separate inquiry from whether a finding of infringement would vitiate a claim term, and that the Federal Circuit's decision in *Ethicon* is not to the contrary.

The invention at issue in *Ethicon* was a surgical stapler with a "lockout mechanism" that prevented the stapler from firing once the staple cartridge had been spent. *Ethicon,* 149 F.3d at 1311. Plaintiff alleged infringement under the doctrine of equivalents with respect to two claim elements: the location of the "lockout mechanism" as described in claim 6, and the timing of the operation of the "restraining structure" relative to staple

firing, as described in claim 24. *Id.* at 1315.

Claim 6 of the *Ethicon* patent describes a lockout mechanism that is "connected to . . . longitudinal slots" in the staple cartridge. *Id.* at 1312. These longitudinal slots receive "pusher bars" that cause the stapler to fire. *Id.* When the lockout mechanism is connected to the longitudinal slots in the cartridge, it prevents the pusher bars from entering the cartridge and keeps the stapler from firing. *Id.* The accused device also employed a lockout mechanism, but its mechanism was not connected to longitudinal slots in its cartridge. *Id.* at 1318. Rather, the accused mechanism was located opposite the staple cartridge and prevented the pusher bars from being pushed, as opposed to obstructing their entry into the cartridge. *Id.* at 1313. On these facts, the court held that plaintiff's claim of infringement under the doctrine of equivalents was properly dismissed on summary judgment, reasoning as follows:

> Although Ethicon is certainly correct that it would be insufficient to base a conclusion of non-infringement by equivalents solely on the fact that the allegedly infringing lockout is *not* connected to the longitudinal slots, the district court determined that [defendant's] lockout is not even close to the longitudinal slots. Instead, it is located . . . near the rear of the stapler. Because the rear of the stapler is opposite the longitudinal slots, no reasonable jury could have found that the [defendant's] lockout was substantially "connected to said longitudinal slots."

*Id.* at 1318–19 (emphasis in original).

In contrast, the court reversed a grant of summary judgment of non-infringement by equivalents with respect to claim 24. Claim 24 describes, among other things, the timing of the operation of a restraining

mechanism relative to staple firing. The patent claim states that the mechanism operates "during staple firing," but the restraining mechanism of the accused device operated "immediately prior" to staple firing. *Id.* at 1319. On these facts, the court held that it was improper to grant summary judgment of non-infringement, reasoning as follows:

> [T]his physical difference translates into a "very slight," "very quick" temporal difference, a period that is perhaps as short as a few thousandths of a second. Thus, we cannot say as a matter of law that this difference is substantial. It is a subtle difference in degree, not a clear, substantial difference or difference in kind, as was the case regarding claim 6.

*Id.* at 1321.

Based upon the analysis in *Ethicon*, plaintiff argues that its claim of equivalents infringement should succeed because Cap II's outer cap cover wall abutments are substantially identical to the side wall abutments described in its patent claims. Although the decision in *Ethicon* does seem to hinge on the nature of the difference between the structure described in a patent claim and an accused device, plaintiff's reliance on the holding is misplaced.

First, *Ethicon* affirmed that the doctrine of equivalents is limited by the all elements rule, and that a finding of equivalents infringement is precluded if it would be "somehow inconsistent with the language of the claim." The court then proceeded to hold that the difference between "during" firing and milliseconds before firing was too insignificant to vitiate a claim element. *Id.* at 1321. *Ethicon* does not, therefore, undermine defendant's argument that, under appropriate circumstances, the vitiation doctrine severely restricts the application of the doctrine of equivalents.

Second, the court noted that the comparison between claim 24 and the accused device revealed "a subtle difference in degree, not a clear, substantial difference or difference in kind, as was the case regarding claim 6." *Id.* at 1321. Here, although the difference between cover wall and side wall abutments may or may not be substantial, the difference is clear, and one of kind rather than degree. The patent claims and specifications crisply distinguish between the cover and side walls of the outer cap. Moreover, a side wall and a cover wall are two different things, and not merely different points along the same continuum, as "during" firing and less than a second before firing arguably are.

Finally, cases decided after *Ethicon* have clearly held that the degree of similarity between an element of a claimed invention and a feature of an accused device is irrelevant—or at least secondary—if the vitiation doctrine otherwise applies. For example, in *DeMarini Sports, Inc. v. Worth, Inc.*, the Federal Circuit clearly stated that

> there are limits to the application of the doctrine of equivalents aside from the question of insubstantiality.... [T]he question of insubstantiality of the differences is inapplicable if a claim limitation is totally missing from the accused device.

239 F.3d 1314, 1332 (Fed.Cir.2001). Similarly, in *Wham–O, Inc. v. Sport Dimension, Inc.*, 398 F.Supp.2d 1081 (N.D.Cal. 2005), the court emphasized the

> substantial difference between roles and applications of the vitiation prong of the all limitations rule and the substantive analysis of infringement by equivalents. The former is a threshold question for the court focusing on the language of the claim limitation.... While some courts appear to have taken into account the degree of functional difference in deter-

mining whether a finding of infringement by equivalents would vitiate a claim limitation, the recent trend in the Federal Circuit has been to afford primacy to the language of the claims with little regard to the analysis of function. 398 F.Supp.2d at 1092 (internal citations omitted). *See also, Nautilus Group, Inc. v. Icon Health & Fitness, Inc.,* 2005 WL 1902498, at * 5 (W.D.Wash. Aug. 8, 2005) (holding that, "[i]f the Court finds that a theory of equivalents would vitiate a claim limitation, that completely precludes an assertion of infringement under the doctrine of equivalents, regardless of arguments that two functions are equivalent as a factual matter").

The facts in *Wham–O* are strikingly similar to those presented here. *Wham–O,* like this case, involved a close question in terms of equivalence. Plaintiff in *Wham–O* claimed that defendant's product infringed its patent for a surfboard made up of a foam core covered by thin layers of plastic sheeting. *Id.* at 1083. The patent claimed a clear or "non-opaque" outer plastic sheet with a graphic design located on its inner surface, yielding a graphic design that is visible yet protected by the board's outer plastic layer. *Id.* The defendant's board similarly used clear plastic sheeting to protect its graphic design while allowing it to be seen, but located its design on the *outer* surface of the *inner* layer of plastic sheeting rather than the inner surface of the outer plastic layer. *Id.*

The court in *Wham–O,* relying heavily on the Federal Circuit's reasoning in *Freedman,* found that application of the doctrine of equivalents was precluded by vitiation concerns under the all elements rule. In contrast to *Ethicon,* where the lockout mechanisms were "nowhere near" each other, the plastic sheets in *Wham–O* were immediately adjacent. Still, the

*Wham–O* court—adopting reasoning equally applicable here—went on to apply *Ethicon* in support of its holding:

As in *Ethicon,* the claim limitation at issue in the instant case specifically locates the imprinting of the graphics on the outer layer, not the inner layer. Given the simplicity of the structure and the clarity of the limitation, imprinting the graphics on the inner layer rather than the outer layer constitutes a "difference in kind," not a "subtle difference in degree."

398 F.Supp.2d at 1093.

The abutments in this case are similar to the graphic designs on the *Wham–O* surfboard. The upper corner of the side wall and the outer corner of the cover wall are at adjacent points on Caps I and II, just as the inside of the outer layer and outside of the inner layer were adjacent on the surfboards in *Wham–O.* Thus, "given the simplicity of the structure and the clarity of the limitation," placing the abutments on the cover wall rather than the side wall "constitutes a 'difference in kind,' not a 'subtle difference in degree.'" *Id.* Having considered all of the circumstances enumerated in *Freedman,* I conclude that the vitiation doctrine bars a finding that OI's cap infringes the '934 patent under the doctrine of equivalents.

### CONCLUSION

In light of the Supreme Court's continued support for the doctrine of equivalents, plaintiff may be wondering when the doctrine would ever apply, if not in a case with as seemingly minor a difference between the accused device and the patent claim as this one. The answer is that, where the claimed invention is a simple structural device in an already crowded art, and the claim limitations are clearly stated and sharply defined, and the variation presented by the accused device was foreseeable to the patent drafter, there

may indeed be few, if any, infringing equivalents. Here, plaintiff has chosen to limit its patent claim to a cap with abutments on its side wall. "Members of the public were therefore justified in relying on this specific language in assessing the bounds of the claim." *Freedman,* 420 F.3d at 1362. To find that a cap with cover wall abutments infringed would significantly impair the public notice function of patents and hamper future innovation.

For the foregoing reasons, I respectfully recommend that the defendant's summary judgment motion of non-infringement be granted and that plaintiff's motion for summary judgment and defendant's motion to take additional discovery under Federal Rule 56(f) be denied as moot. Any objections to the recommendations in this report must be filed with the Clerk of the Court and the Chambers of the Honorable Raymond J. Dearie within ten days of receiving this Report and Recommendation, and in any event, no later than November 30, 2006. Failure to file timely objections may waive the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(2); Fed.R.Civ.P. 6(a), 6(e), 72; *Small v. Sec'y of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989).